**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT T. PRITCHARD, SR. and | ) | |
| ELIZABETH ANN PRITCHARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1621 |
| | ) | Hon. Nora Barry Fischer |
| DOW AGRO SCIENCES, a division of | ) | |
| DOW CHEMICAL COMPANY, and | ) | |
| SOUTHERN MILL CREEK PRODUCTS | ) | |
| OF OHIO | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.   Introduction

Before the Court are two motions: (1) Plaintiffs Robert T. Pritchard, Sr. and Elizabeth Ann Pritchard's ("Plaintiffs") Motion to Withdraw Admissions and to Extend Time for Filing (Docket No. 46); and (2) Plaintiffs' Motion for Extension of Time to File Plaintiffs' Causation Expert Reports (Docket No. 50).  For the foregoing reasons, the Court GRANTS both Motions.

### II.   Background

The instant matter is essentially a toxic tort case in which Plaintiffs assert that chemicals manufactured and sold by Defendants Dow Agro Sciences ("Dow") and Southern Mill Creek Products of Ohio's ("Southern Mill"; collectively, "Defendants") caused Robert T. Pritchard ("Mr.

Pritchard") to develop cancer in the form of Non-Hodgkin's Lymphoma.[1] (Docket No. 23 at ¶ 20).

Mr. Pritchard is and has been self employed as an exterminator/pest control operator, and as such, allegedly used the chemicals manufactured by Defendants. (Docket No. 23 at ¶¶ 7-10). He alleges that despite taking all the precautionary measures recommended on the chemicals' labels, he began experiencing medical problems. (Docket No. 23 at ¶ 11). On August 28, 2005, Mr. Pritchard was diagnosed with Non-Hodgkin's Lymphoma. (Docket No. 23 at ¶ 13). Thus, given these allegations, this case encompasses scientific, medical, product liability, causation, expert, and other evidentiary issues on liability, alone.

Initially, Plaintiffs obtained a writ of summons on August 27, 2007, and filed their *pro se* complaint on October 29, 2007 in the Court of Common Pleas of Fayette County, Pennsylvania. (Docket No. 1). Therein, the following claims were alleged: negligence, strict liability, and loss of consortium and services (Counts I, II, V) against both Defendants; as well as breach of implied warranty of merchantability and misrepresentation (Counts III, IV) against Dow. (Docket No. 1). At each count, Plaintiffs requested medical costs, punitive damages, damages for pain and suffering, as well as reasonable attorney fees and court costs. (Docket No. 1). Thereafter, this case was removed by Defendants on November 28, 2007 based on this Court's diversity jurisdiction.[2] (Docket No. 1). On November 29, 2007, Dow filed a Motion to Dismiss and Motion to Strike

---

[1]

Non-Hodgkin's Lymphoma is defined as "a heterogeneous group of malignant lymphomas, the only common feature being an absence of the giant Reed-Sternberg cells characteristic of Hodgkin's disease. They arise from the lymphoid components of the immune system, and present a clinical picture broadly similar to that of Hodgkin's disease except the disease is more widespread." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1080 (30th ed. 2003).

[2]

At the time of removal, Plaintiffs were represented by Douglas S. Sholtis, Esquire. Mr. Sholtis is a solo practitioner based in Smithfield, Pennsylvania.

Plaintiffs' Complaint seeking dismissal of Plaintiffs' misrepresentation claim (Count IV), arguing failure to properly plead the elements of intentional and negligent misrepresentation. (Docket Nos. 2 and 3). Additionally, said Defendant argued that Plaintiffs' request for attorneys fees at each count of their complaint should be stricken. *Id.* Likewise, Southern Mill filed a Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f) asserting that the Court should strike Plaintiffs' request for attorney fees in Counts I, II and V of Plaintiffs' Complaint. (Docket Nos. 8 and 9). That same day, Southern Mill also filed its Answer and Affirmative Defenses to the remaining claims. (Docket No. 10).

On January 3, 2008, Plaintiffs filed a Motion for Extension of Time to Amend their Complaint.[3] (Docket No. 13). In response, on January 7, 2008, Defendants filed a Response in Opposition arguing that Plaintiffs' Motion should be denied as untimely. (Docket No. 14). The Court summarily granted Plaintiffs' Motion for Extension and Plaintiffs filed their Amended Complaint on February 6, 2008. (Docket No. 16).

Thereafter, Southern Mill filed its Answer and Affirmative Defenses to the Amended Complaint on February 8, 2008. (Docket No. 17). On that same day, Dow filed its second motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) again arguing for dismissal of the misrepresentation claim (Count IV), for failure to properly plead. (Docket Nos. 18 and 19). Later, on February 27, 2008, Dow filed its Affirmative Defenses and Answer to the remaining claims in Plaintiffs' Amended Complaint. (Docket No. 20). Plaintiffs then

---

[3]

As Dow filed its motion to dismiss on November 29, 2007, pursuant to the Court's Motions Practice Order issued on November 30, 2007, Plaintiffs' response to said motion was due on December 19, 2007. (*See* Docket No. 5). Plaintiffs' counsel advised the Court that he did not receive the Court's orders which were delivered to an incorrect address. Plaintiffs then filed their motion for extension of time on January 3, 2008. (Docket No. 13).

filed their Brief in Opposition to Dow's Motion to Dismiss on March 4, 2008, asserting the sufficiency of their misrepresentation claim as pled. (Docket No. 21). After consideration, the Court granted Dow's Motion to Dismiss, thereby dismissing Plaintiffs' misrepresentation claim (Count IV) because Plaintiffs failed to specify a claim for negligent or intentional misrepresentation. (Docket No. 22). In addition, the Court granted Plaintiffs leave to file a Second Amended Complaint by March 25, 2008. (Docket No. 22).

On March 26, 2008, Plaintiffs filed their Second Amended Complaint asserting the following claims: negligence, strict liability, and loss of consortium and services (Counts I, II, V) against both Defendants; as well as breach of implied warranty of merchantability and misrepresentation (Counts III, IV) against Dow. (Docket No. 23).

Subsequently, on April 4, 2008, Dow filed a Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 41(b), or in the Alternative, to Dismiss Count IV with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the Second Amended Complaint should be dismissed in its entirety as untimely, and that the "case should [ ] proceed based on the First Amended Complaint, except for Count IV (misrepresentation), which this Court previously dismissed and now should order to be dismissed with prejudice." (Docket No. 25 at 2). Likewise, Southern Mill filed its Motion to Dismiss arguing dismissal on the basis of untimeliness. (Docket Nos. 26 and 27). In response, on April 25, 2008, Plaintiffs filed their Brief in Opposition to both Defendants' Motions contending that their Second Amended Complaint was filed late due to problems with this Court's online filing system. (Docket No. 28 at ¶¶ 22, 23).

On May 1, 2008, the Court conducted a status conference to inquire as to the status of service on named defendant, Residex Corporation, wherein Plaintiffs' counsel agreed to fax the Court

Residex's counsel's letter denying that service had been made. (Docket No. 29). In addition, the Court questioned whether oral argument was desired by counsel as to the pending motions, to which all counsel answered in the negative. *Id.* After having reviewed Plaintiffs' faxed submission concerning service, on May 14, 2008, the Court ordered Plaintiffs to make proper service of process on Residex[4] of the Plaintiffs' Second Amended Complaint. (Docket No. 31).

Subsequently, on May 20, 2008, the Court granted in part and denied in part Dow's pending Motion as well as denied Southern Mill's Motion. (Docket Nos. 32 and 33). Specifically, the Court granted Dow's Motion to Dismiss Count IV (misrepresentation) as Plaintiffs did not comply with the Court's March 5, 2008 Order; i.e., Plaintiffs failed to correctly plead a claim for misrepresentation because they failed to specify whether they were pleading intentional, negligent or innocent misrepresentation. *Id.* Accordingly, the Court ordered that Count IV of Plaintiffs' Second Amended Complaint be stricken. *Id.* However, the Court denied Dow's Motion to Dismiss to the extent that it sought dismissal of Plaintiffs' Second Amended Complaint in its entirety pursuant to Rule 41(b). *Id.* Likewise, the Court denied Southern Mill's Motion. *Id.* Accordingly, on May 28, 2008, Defendants filed their Answers and Affirmative Defenses to Plaintiffs' Second Amended Complaint. (Docket Nos. 34 and 35). On that same day, the Court scheduled an initial Case Management Conference for August 29, 2008[5] (Docket No. 39) and subsequently a Case

---

[4]

On June 29, 2008, the Court dismissed Defendant Residex Corporation, without prejudice, because Plaintiffs' Affidavit of Service pertaining to service on said Defendant failed to comply with the requirements of service as required by Rule 4 of the Federal Rules of Civil Procedure. (Docket No. 38).

[5]

The initial case management conference was scheduled by Order of Court issued on July 29, 2008, after the Court ordered that Defendant Residex was dismissed from the case, without prejudice, as Plaintiffs had failed to properly serve said Defendant. (Docket Nos. 38 & 39). The

Management Order was entered on September 5, 2008. Pursuant to said Order, the following deadlines were established: (1) factual discovery was to conclude on March 1, 2009; (2) Plaintiffs were to file their expert medical causation report(s) by September 30, 2008; (3) Plaintiffs' expert(s) were to be deposed by December 15, 2008; (4) Defendants' medical causation reports were to be filed by January 15, 2009; (5) Defendants' expert(s) were to be deposed by February 18, 2009; and (6) any *Daubert* motions related to medical causation were to be filed by March 15, 2009. (Docket No. 43).[6] The Order also established deadlines for expert discovery, which was to conclude on August 1, 2009, as well as set deadlines for summary judgment motions and the filing of pretrial statements. *Id.*

## III. Discussion

The Court will now address the two pending motions, in turn.

### A. Plaintiffs' Motion to Withdraw Admissions and to Extend Time for Filing

#### 1. Background

On June 18, 2008, Defendants served Plaintiffs with their first set of twenty-two Requests for Admissions ("RFAs"). (Docket No. 52 at 2; Docket No. 52-2). Plaintiffs had thirty days in which to respond or object in writing, i.e., by July 21, 2008. However, on July 21, 2008, Plaintiffs' counsel, Doug Sholtis, Esquire, left a voicemail message for Defendant Dow's local counsel Kimberly Brown, Esquire requesting a thirty day enlargement of time in order to complete his

Court notes that when the initial Case Management Conference was scheduled, nearly a year had passed since this action was initiated.

[6]

As discussed in further detail below, an Amended Case Management Order was entered on November 25, 2008, amending the deadlines in the Case Management Order to reflect the Court's granting of Defendants' motion for a 45-day extension of time. (*See* Docket No. 62).

clients' responses to the RFAs. (Docket No. 52 at 2). Defendants, through an email from Ms. Brown on July 21, 2008, agreed, and thus, the parties set a revised response date of August 20, 2008. (Docket No. 47 at 3; Docket No. 52 at 2; Docket No. 52-3). Plaintiffs' counsel, Mr. Sholtis, confirmed the extension of time and new due date in an email dated July 23, 2008 stating "I will provide the documents, interrogatories, etc. by August 20, 2008." *Id*.

However, on August 20, 2008, at 4:11 p.m., Defendants' counsel, Kimberly A. Brown received another voicemail from Mr. Sholtis, in which he stated the following:

> Hi Kim, Doug Sholtis. Hey, I just looked at the uh stipulation selecting ADR process. Looks good to me. Mediation. Scanlon. Paras. Uh, Mr. Pritchard. Etc. Etc. Etc. Uh, the only thing I don't see on there is Nick's name, Attorney Timperio, unless you sent one to him too. Uh, additionally, uh, Pritchard came in this morning to review our answers to the interrogatories, we just had to make a couple changes, I will either mail out tonight or tomorrow morning. [unintelligible] to let you know that that's done too. So, uh, thanks Kim, if there is anything I am forgetting, call me back. Thanks a lot. Ba-bye.

(Docket No. 52-4). There does not appear to be any written confirmation of this voicemail message. In addition, the record does not reflect whether Ms. Brown returned this voicemail message or not. Subsequently, Defendants' counsel received Plaintiffs' responses to the RFAs on August 25, 2008, accompanied by a letter apologizing for the delay. (Docket No. 52 at 3; Docket No. 52-2).

As scheduled, the Court conducted a Case Management Conference on August 28, 2008. At said conference, Defendants' counsel alerted the Court and Plaintiffs' counsel to their untimely response to the RFAs. (Docket No. 52 at 3). Further, Plaintiffs' counsel was informed by defense counsel that the result of their untimely response was that the RFAs were deemed admitted, unless Plaintiffs filed a motion to withdraw. (Docket No. 41; Docket No. 52 at 3).

Specifically, Plaintiffs were served with and did not timely respond to the following RFAs:

1. Pritchard did not purchase any Dursban products[7] on or after August 1, 2003.

2. Plaintiffs have no Documents[8] showing Pritchard purchased any Dursban products on or after August 1, 2003.

3. During Pritchard's employment as a pest control operator, Pritchard was exposed to pesticides other than Dursban.

4. Neither Plaintiffs nor any expert retained by Plaintiffs is in possession of any Documents or evidence, including but not limited to medical or scientific literature, which associate(s) Pritchard's alleged injuries with his alleged Exposure[9] to the Dursban products at issue.

5. Plaintiffs possess no evidence excluding causes other than Pritchard's alleged Exposure to the Dursban products at issue as a cause of his alleged injuries.

6. Pritchard's alleged Exposure to the Dursban products at issue did not cause and/or contribute to his injuries as alleged in the Second Amended Complaint.

7. Plaintiffs possess no evidence that Pritchard's alleged Exposure to the Dursban products at issue caused and/or contributed to Pritchard's injuries alleged in the Second Amended Complaint.

---

[7] The term "Dursban Product(s)" is defined in the RFAs as "any product containing chlorpyrifos as its active ingredient and designed, manufactured, distributed, and/or sold by [Dow], including but not limited to those Dursban products specifically referenced in Plaintiffs' Second Amended Complaint." (Docket No. 52-2 at ¶ 8).

[8] The term "Document(s)" is defined in the RFAs as "any kind of written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies and drafts, and including, but not limited to:" any of the comprehensive list of potential documents set forth therein. (Docket No. 52-2 at ¶ 4).

[9] The term "Exposure" or "Exposed" is defined in the RFAs as "being made subject to, coming into contact with, made vulnerable by or being made accessible to any substance that may affect that person detrimentally or being placed in a position or condition favorable to contracting disease or adverse physical, psychological, or psychiatric effects." (Docket No. 52-2 at ¶ 7).

8.      No Health Care Provider[10] has told Pritchard that Pritchard's alleged injuries were caused by his alleged Exposure to the Dursban products at issue.[11]

9.      No act or omission on the part of [Dow] caused and/or contributed to Pritchard's alleged injuries.

10.     You possess no evidence that any act or omission on the part of [Dow] caused or contributed to Pritchard's alleged injuries.

11.     An applicable standard of reasonable care for the testing of pesticides such as the Dursban products at issue is established by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, and its implementing regulations, particularly 40 C.F.R. Part 158.

12.     Plaintiffs possess no evidence that an applicable standard of reasonable care for the testing of pesticide products such as the Dursban products at issue is not established by the FIFRA and its implementing regulations, particularly 40 C.F.R. Part 158.

13.     [Dow] met the applicable standard of reasonable care set forth by FIFRA and its implementing regulations, particularly 40 C.F.R. Part 158, for the testing of the Dursban products at issue.

14.     Plaintiffs possess no evidence that [Dow] failed to meet the applicable standard of reasonable care set forth by FIFRA and its implementing regulations, particularly 40 C.F.R. Part 158, for the testing of the Dursban products at issue.

15.      As part of its decision to register the Dursban products at issue pursuant to FIFRA, the EPA determined that Dursban's labeling complied with the requirements of FIFRA at all

---

[10]

The term "Health Care Provider" is defined in the RFAs as "any physician, surgeon, nurse, chiropractor, osteopath, psychiatrist or psychologist, clinic, hospital, or other health care provider." (Docket No. 52-2 at ¶ 5).

[11]

The Court notes that Dr. Emilo Navarro has produced an expert report on behalf of Plaintiffs in this case. *See* note 14 *infra*.

relevant times.

16.    Plaintiffs possess no evidence that as part of its decision to register the Dursban products at issue pursuant to FIFRA, the EPA did not determine that Dursban's labeling complied with the requirements of FIFRA at all relevant times.

17.    The Dursban products to which Pritchard was allegedly Exposed complied with all of the labeling requirements of FIFRA and its implementing regulations.

18.    Plaintiffs possess no evidence that the Dursban products to which Pritchard was allegedly Exposed did not comply with all of the labeling requirements of FIFRA and its implementing regulations.

19.    At all times pertinent to the Exposure alleged in the Second Amended Complaint, the Dursban products at issue were registered with the Pennsylvania Secretary of Agriculture pursuant to the Pennsylvania Pesticide Control Act.

20.    At the time the Pennsylvania Secretary of Agriculture registered the Dursban products at issue pursuant to the Pennsylvania Pesticide Control Act, the Pennsylvania Secretary of Agriculture determined that the Dursban products at issue met the requirements of state and federal law regarding pesticides.

21.    You possess no evidence that, at the time it registered the Dursban products at issue pursuant to the Pennsylvania Pesticide Control Act, the Pennsylvania Secretary of Agriculture did not determine that the Dursban products at issue met the requirements of state and federal law regarding pesticides.

22.    In registering the Dursban products at issue under the Pennsylvania Pesticide Control Act, the Pennsylvania Secretary of Agriculture determined that the Dursban label(s) contined a warning or caution statement which may be necessary and if complied with is adequate to protect the health of the applicator and other humans.

(Docket No. 52-2). Accordingly, Defendants' counsel took the position that all of the above

statements were admitted as of August 20, 2008, the parties agreed upon date that Plaintiffs' responses to the RFAs were due. (Docket No. 41, Docket No. 52-2).

In accordance with the deadlines set at the Case Management Conference, Plaintiffs filed their Motion to Withdraw Admissions and to Extend Time for Filing as well as a Brief in Support on September 15, 2008. (Docket Nos. 46 and 47). On September 25, 2008, Defendants filed a Motion for Leave to File Excess Pages in Response to Plaintiffs' Motion, which the Court granted. (Docket Nos. 48 and 49). Subsequently, on October 1, 2008, Defendants filed their Response and Brief in Opposition. (Docket Nos. 52 and 53). On October 16, 2008, Plaintiffs filed their Brief in Response. (Docket No. 57). The Court now addresses the parties' arguments as to this pending motion.

## 2.    Issues Presented

In their Motion requesting withdrawal of their admissions to the RFAs, as well as requesting additional time to submit answers to same, Plaintiffs argue that they have satisfied both prongs of the Rule 36(b) test for withdrawal. (Docket Nos. 46 and 47). Defendants respond that Plaintiffs' actions concerning their untimely response to Dow's RFAs show a lack of diligence that cannot reach excusable neglect; thus, there is no basis for withdrawing the admissions or extending the time to answer the RFAs. (Docket No. 52 at 5). Defendants also assert that Plaintiffs have failed to prove that the merits of the case will be promoted by withdrawal of the deemed admissions. (Docket No. 52 at 6). In particular, Defendants argue that Plaintiffs do not have admissible evidence contradicting the deemed admissions and have submitted no evidence in support of their motion to withdraw. (Docket No. 52 at 7-8). The Court shall address these arguments, in turn.

11

### 3. Analysis

#### i. Legal Standard

As stated, the parties dispute the applicable legal standard governing Plaintiffs' motion to withdraw. Plaintiffs argue that their motion should be evaluated under the standard set forth in Rule 36(b). (Docket No. 47). Defendants counter that Plaintiffs have not demonstrated that their failure to respond to the RFAs constitutes excusable neglect pursuant to Rule 6(b)(1)(B)[12] of the Federal Rules of Civil Procedure and the factors outlined by the United States Court of Appeals for the Third Circuit sufficient for this Court to permit Plaintiffs to withdraw their admissions. (Docket No. 52 at 5).

Defendants' argument is general in nature, relying on the text of Rule 6 and the stated factors developed by subsequent cases. (*Id.*). They have not cited any controlling caselaw in support of their position that the excusable neglect standard should apply to the circumstances of this case, which involves the withdrawal of matters deemed admitted due to Plaintiffs' failure to timely respond to RFAs, a situation which is specifically covered by Rule 36(b). In addition, courts within this district have applied the standard set forth in Rule 36(b) to evaluate whether withdrawal of such admissions is warranted. *See Altman v. Ingersoll-Rand Company*, Civ. Act. No. 05-596, 2008 WL 596066 (W.D. Pa. 2008)(discussing decisions of district courts within this district applying Rule 36(b) standard to withdrawal of admissions and applying the same). Further, leading commentators have suggested that the Rule 36(b) standard is preferable to the

---

[12]

Rule 6(b)(1)(B) provides that "when an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B).

excusable neglect standard of Rule 6 in this situation.

> [T]hough some [ ] cases seem to turn on whether the failure to provide a timely answer was excusable neglect, a test generally appropriate under Rule 6(b)(2) for enlargement of time after the period has expired, it would seem that the test now stated in Rule 36(b) for withdrawal of admissions is tailored more precisely to the purpose of Rule 36 generally, and that the admission that otherwise would result from a failure to make timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request.

8A C. Wright, A. Miller, Federal Practice and Procedure § 2257 (2d. ed. 1994).

Accordingly, regardless of whether Plaintiffs have met the burden for excusable neglect under Rule 6, the Court finds that Plaintiffs' untimely response is best evaluated pursuant to the standard set forth in Rule 36(b), rather than the excusable neglect standard. The Court now turns to that standard.

Rule 36 of the Federal Rules of Civil Procedure sets forth the procedures for serving and responding to RFAs. Failure to timely respond to such requests for admissions results in an automatic admission of the matters requested. Fed. R. Civ. P. 36(a)(3). Specifically, Rule 36 provides:

> [a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed served on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the Court.

Fed. R. Civ. P. 36(a)(3).

Once admitted, the matter is conclusively established "unless the Court, on motion, permits the admission to be withdrawn or amended" pursuant to Rule 36(b). Fed. R. Civ. P. 36(b). Furthermore under Rule 36(b), "the court may permit withdrawal or amendment if it would

13

promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b).[13]

Recently this District Court has addressed the application of Rule 36 in *Altman v. Ingersoll-Rand Company*, Civ. Act. No. 05-596, 2008 WL 596066 (W.D. Pa. 2008), stating that:

> ... courts in this district may permit withdrawal or amendment of an admission, thus vitiating the binding effect of the admission. *Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Company*, 123 F.R.D. 97, 103 (D.De. 1988); *See also*, *United States v. Branella*, 972 F.Supp 294, 301 (D.N.J. 1997) (courts have great discretion in deciding whether to amend or withdraw an admission); *Flohr v. Pennsylvania Power & Light Co.*, 821 F.Supp. 301, 306 (E.D. Pa. 1993)(the court can, at its discretion, permit what would otherwise be an untimely answer to requests for admissions); *Kleckner v. Glover Trucking*, 103 F.R.D. 553, 557 (M.D. Pa. 1984)(it is clear from the language of Rule 36(b) that the Court has substantial discretion in deciding whether to allow withdrawal of that admission). Simply put, Rule 36(b) simultaneously emphasizes the importance of resolving an action on the merits while at the same time upholding a party's justified reliance on an admission in preparation for trial.

*Altman*, 2008 WL 596066 at *3.

"A motion to withdraw admissions is most likely to be granted where (1) upholding the admissions would be to practically eliminate any presentation of the merits, and (2) the admissions

---

[13]

The Court notes that the language of Rule 36(b) was changed by the 2007 amendments to the Federal Rules of Civil Procedure, which formerly read: "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." However, the official Advisory Notes to the Rule 36 amendments provide: "[t]he language of Rule 36 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These rules are intended to be stylistic only." FED. R. CIV. P. 36(b) Advisory Committee Notes, 2007 Amendments.

resulted from brief delays or inadvertent technical deficiencies that were promptly corrected without undue burden from the requesting party." SCHWARZER, TASHIMA, & WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL 11:2094 (2008).

### ii.    First Prong-Presentation of the Merits

The Court finds that the first prong of the test has been satisfied.  As Plaintiffs acknowledge, they are deemed to have admitted that "Pritchard's alleged exposure to the Dursban products at issue did not cause and/or contribute to his injuries as alleged in the Second Amended Complaint." (Docket No. 52-2, RFA No. 6).  The subject matter of this admission, in and of itself, reaches the merits of the Plaintiffs' case as this admission would effectively preclude the Plaintiffs' case from going forward. *See Skoczylas v. Atlantic Credit & Finance, Inc.,* Civ. Act. No., 0-5412, 2002 WL 55298, at *4 (E.D. Pa. 2002)(a plaintiff's deemed admissions were directly contrary to facts that formed the basis of plaintiff's complaint; by allowing amendment to the admissions, consistency with the facts averred in the complaint would result and promote adjudication on the merits); *Davis v. Noufal*, 142 F.R.D. 258, 259 (1992) (defendant's requested admissions negated all of plaintiff's allegations; therefore, allowing the admissions to stand would block any consideration of the merits).

Defendants rely on the decision in *Katrina Canal Breaches Cons. Litig.,* Civ. Act. No. 05-4185, 2008 WL 3884335 (E.D. La. 2008), which is distinguishable because although Plaintiffs have not presented evidence in the record to prove that the deemed admissions are contrary to the record,[14] Defendants have also failed to cite specific examples in the record demonstrating that

---

[14]

The Court notes that Plaintiffs have submitted an expert report of Dr. Emilio Navarro, and despite Defendants' objections to the content of same, it cannot be said that Plaintiffs have no evidence at this stage. (*See* Docket No. 58).

Plaintiffs' deemed admission are not contrary to the record. *Katrina*, 2008 WL 3884335, at *4. Further, granting Plaintiffs' Motion to Withdraw their admissions at this early stage in the litigation will permit the normal and just presentation of the case on its merits, which is precisely the objective of Rule 36(b). To the contrary, denying Plaintiffs' Motion would most likely result in a final judgment for Defendants at the summary judgment stage without an opportunity to present the merits of the case. *See Sadler v. State Farm Fire and Cas. Co.*, Civ. A. No. 08-951, 2008 WL 4960199 (W.D.Pa. Nov. 19, 2008)(denying defendant's motion for summary judgment and granting plaintiffs' motion for withdrawal of admissions as defendant's motion was entirely predicated on facts deemed admitted due to plaintiffs' untimely answers to interrogatories, which were submitted 15 days late); *see also St. Regis Paper Co. v. Upgrade Corp., et al.*, 86 F.R.D. 355, 357 (W.D. Mich. 1980). This would clearly prejudice Plaintiffs and is an untenable result given that there is no evidence of record that Plaintiffs themselves caused any delays in this case, including the submission of the untimely RFAs. Moreover, Plaintiffs' response to the RFAs was untimely by very few days. *See Rabil v. Swafford*, 128 F.R.D. 1, 3 (D.D.C. 1989)(court reasoned that "since the response was filed only 12 days late and the case was within the scope of pretrial procedures, the standard to be applied by the court is whether upholding the admissions would eliminate any presentation of the merits and if the opposing party has met its burden of showing prejudice."); *NCR Corp. v. J-COS Systems Corp.*, Civ. A. No. 87-1520, 1987 WL 13683 (E.D. Pa. Jul. 13, 1987)(defendant's admission considered to be withdrawn for purposes of summary judgment motion despite thirteen day delay because said delay did not prejudice plaintiff nor did it cause a significant loss of time in the course of the litigation).

　　　The cases Defendants cite in support of their argument are also factually distinguishable

in that the parties were attempting to amend or withdraw their admissions at much later stages in the proceedings, e.g., after a ten month period to respond, the conclusion of a summary judgment ruling, and one month prior to a bench trial. *See Katrina*, 2008 WL 3884335 (E.D. La. 2008)(court denied withdrawal of RFA's in a complex class action case after a ten month response period, during which the court extended the response deadline twice, some plaintiffs still responded to the RFA's in an untimely fashion, and other plaintiffs had failed to respond.); *Republic Savings Bank v. United States*, 57 Fed. Cl. 73 (Fed. Cl. 2003)(court denied defendant's motion regarding amendment of certain responses because plaintiffs had filed and argued a summary judgment motion on damages influenced by these admissions and an abrupt change in the admissions at such a late point in the litigation would deprive plaintiffs of an adequate opportunity to prepare for trial); *Coca-Cola Bottling Co.,* 123 F.R.D. 97 (D.Del. 1988)(court did not permit defendant to withdraw admission as said admission had operated to preclude plaintiffs from obtaining discovery over an 18-month period of time, and defendant had unreasonably delayed bringing its motion to amend the admission until less than one month before trial). Because this case is still in the early stages of discovery, the record is not yet fully developed, and for the reasons set forth above, the Court finds that the merits of the case will be promoted by allowing Plaintiffs to withdraw their admissions and proceed.

### iii.    Second Prong: Prejudice

The second prong of Rule 36(b) also favors withdrawal. A party is not prejudiced by a brief delay in the receipt of a response to requests for admissions simply because his position is prejudiced by the true facts contained in the response. *The Maramount Corp. v. B. Barks & Sons, Inc.*, 1999 WL 55175, at * 3 (E.D. Pa. 1999). The prejudice contemplated by Rule 36(b) "relates

to the difficulty a party may face in proving its case, e.g., caused by the unavailability of witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 60 (1st Cir. 1982).

Defendants have not established on this record the requisite prejudice to bar Plaintiffs from withdrawing their admissions. The only prejudice to which Defendants refer is the further expense and effort they will extend to defend their positions on the merits of the case through discovery, summary judgment, and trial. However, said reasons do not amount to prejudice under Rule 36(b). *In re Vincent M. DeDemenico v. Vincent M. DeDomeico*, 286 B.R. 775, 777 (2002); *See also Altman*, 2008 WL 596066, at *4 (quoting *Coca-Cola Bottling Company*, 123 F.R.D. at 105) ("Generally, courts have defined prejudice as relating to 'the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted.'").

According to the present case management order, discovery in this case does not end until April 15, 2009. (Docket No. 62). This case is in the early stages of discovery, and is not on the eve of summary judgment or trial; hence, Defendants cannot claim that granting the motion to withdraw the admissions would be detrimental to discovery or any other dispositive motion. Further, Defendants reviewed Plaintiffs' responses and/or denials, and the delay (five days) in receipt was minimal. "Given the short passage of time between when the responses were due and when the responses were served, and given the substantial period of time remaining to conduct discovery, [Defendants] cannot show that [they] would [be] prejudiced if the admissions [are] withdrawn." *Essex Builders Group, Inc. v. Amerisure Insur. Co.*, 230 F.R.D. 682, 687 (M.D. Fla.

2005).

### 4. Conclusion

Accordingly, for the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Withdraw Admissions and to Extend Time for Filing [46].

**B.      Plaintiffs' Motion for Extension of Time to File Plaintiffs' Causation Expert Reports**

### 1. Background

On September 29, 2008, Plaintiffs filed a Motion For Extension of Time to File Plaintiffs' Causation Reports, requesting an additional 120 days to file their causation expert reports. (Docket No. 50).  The initial Case Management Order sets out that Plaintiffs' medical causation reports shall be filed on September 30, 2008.  (Docket No. 43).  Plaintiffs filed their Motion one day before this deadline.  Plaintiffs contend that since the inception of this case, their current counsel has been searching for co-counsel in order to better represent the Plaintiffs as the case is beyond their current counsel's resources and field of expertise.[15]  (Docket No. 50 at ¶¶ 3-4).  After diligently searching for approximately one year, Plaintiffs' counsel represents that he has finally located potential co-counsel to aid in this case, i.e., Anapol Schwartz, located in Philadelphia, Pennsylvania.[16]  (Docket No. 50 at ¶ 7).  However, Plaintiffs assert that counsel from Anapol Schwartz have requested a ruling on the Plaintiffs' request for withdrawal of their admissions and

---

[15]

The Court agrees that this case is beyond current counsel's abilities.

[16]

Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley , P.C. ("Anapol Schwartz"), although primarily known as a personal injury firm, as evolved into a multi-faceted firm, practicing medical malpractice, pharmaceutical, toxic tort, class actions, products liability and automobile litigation. Analpol Schwartz has over thirty attorneys.  *See* http://www.anapolschwartz.com.

additional time for the filing of causation expert report(s) in order for them to become involved in this matter. (Docket No. 50 at ¶ 8).

In response, on October 14, 2008, Defendants filed their Brief in Opposition (Docket No. 56), arguing that if the Court grants the 120 day enlargement, the discovery plan in this case, which took substantial effort to finalize, will be thwarted as the Case Management Order is dependent on said deadlines. (Docket No. 56 at 2). In addition, Defendants contend that Plaintiffs have failed to comply with the Court's Case Management Order and Rule 37.1, both of which require the parties to consult prior to requesting an extension of discovery deadlines. *Id.* Further, Defendants contend that Plaintiffs have failed to demonstrate good cause for such enlargement as the Court has not been presented with evidence demonstrating their diligent efforts to locate new counsel. *Id.*

Of note, on November 24, 2008, Defendants filed a Joint Motion for 45-day Extension of Remaining Schedule Order Deadlines, which included an Amended Case Management Order. (Docket No. 60). The Court granted the Defendants' Motion, accepted their proposed deadlines, and issued an Amended Case Management Order on November 25, 2008. (Docket No. 62). The Plaintiffs' Motion is ripe for disposition and the Court addresses it as follows.

## 2. Issues Presented

Plaintiffs filed this Motion requesting an additional 120 days be granted in order to file their causation expert reports and to allow the appearance of co-counsel in this matter. (Docket No. 50 at ¶¶ 11, 14). Defendants contend that Plaintiffs' motion should be denied because they have failed to comply with the Court's Case Management Order and Local Rule 37.1 (Docket No. 56 at 8). Specifically, Plaintiffs have failed to attach a certificate of conferral with their motion.

*Id.* Further, Plaintiffs have failed to show good cause and diligence concerning the addition of new co-counsel in this matter. (Docket No. 56 at 9, 10).

### 3. Analysis

#### i. Legal Standard

Rule 16 of the Federal Rules of Civil Procedure authorizes a court to enter pretrial scheduling orders setting deadlines for the completion of discovery, including expert discovery. FED. R. CIV. P. 16. Rule 16(b) provides that " a schedule may be modified for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish "good cause" in this context, the party seeking an extension should show that more diligent pursuit in discovery was impossible. *McElyea v. Navistar Int'l Transp. Corp.*, 788 F.Supp. 1366, 1371 (E.D. Pa. 1991) (citing *Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir. 1988)("The Court of Appeals will not interfere with the discretion of the district court by overturning a discovery order absent a demonstration that the court's actions made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible")). Specifically, preclusion of expert testimony is an appropriate sanction where plaintiff's failure to comply with discovery orders does not result from a good faith inability to timely produce the required information. *Sitkoff v. BMW of North America, Inc, et al.*, Civ. A. No. 93-3804, 1995 WL 420033 (E.D. Pa. 1995). Finally, matters concerning the conduct of discovery, including the granting or denying of motions relating thereto, are vested in the sound discretion of the trial court and cannot be disturbed without a showing of abuse of discretion. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).

In addition, Local Rule 7.1 states "that any discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37 shall comply with the requirements of LR 37.1 and 37.2." W.D. Pa. L.R. 7.1.

Local Rule 37.1 states:

> [u]nless otherwise ordered, the clerk shall not accept for filing any discovery motion, except those motions brought pursuant to Fed. R.Civ. P 26(c) by a person who is not a party, unless counsel for the moving party or the unrepresented moving party attached thereto a certificate that said counsel or unrepresented party has made a reasonable effort to reach an agreement with opposing counsel or unrepresented parties on the matters set forth in the motion and summarizing the facts and circumstances of that reasonable effort. The certificate shall be denominated a Discovery Dispute Certificate.

W.D. Pa. L.R. 37.1(A). Further, although most decisions analyze certification in connection to a motion to compel discovery instead of a motion for enlargement of time, "[j]udges need not dismiss motions to compel because they were not filed with appropriate certification, but rather have discretion to dismiss on those grounds." *Powell v. South Jersey Marina, Inc.*, Civ. A. No. 04-2611, 2007 WL 2234513, at *3 (M.D. Pa. 2007) (citing *City Line Construction Fire & Water Restoration, Inc., et al v. Heffner*, Civ. A. No. 07-1057, 2007 WL 1377643 (E.D. Pa. 2007)).

Moreover, this Court's Practices and Procedures state that: "briefs in support of motions shall be filed simultaneously with all motions <u>except</u> discovery motions, motions for extensions of time and motions for continuance, for which <u>no</u> briefs are required." *See* Practices and Procedures of Judge Nora Barry Fischer, Effective July 1, 2007, II(B), *available at*: http://www.pawd.uscourts.gov/Documents/Public/Reference/j_fischer.pdf. (emphasis in original).

### ii.      Defendants' non-compliance argument

Defendants argue that Plaintiffs' Motion should be denied because they have failed to abide by Local Rule 7.1 and Local Rule 37.1. (Docket No. 56 at 8). Specifically, Plaintiffs have failed to include a Rule 37.1 certification and have failed to include a memorandum of law with their Motion, as required by the Court's Case Management Order. *Id.*

The Court's Case Management Order was agreed upon by counsel to the parties and presented to the Court on June 12, 2008 (Docket No. 36) and discussed during its case management conference on August 29, 2008. (Docket No. 41). The Case Management Order should be read in conjunction with this Court's Practices and Procedures which state that "briefs in support of motions shall be filed simultaneously with all motions <u>except</u> discovery motions, motions for extensions of time and motions for continuance, for which <u>no</u> briefs are required." *See* PRACTICES AND PROCEDURES OF JUDGE NORA BARRY FISCHER, EFFECTIVE JULY 1, 2007, II(B)(emphasis in original). The Court's Practices and Procedures do not explicitly require a certificate of conferral. *Id*.

Accordingly, the Court finds that Plaintiffs' failure to include a memorandum of law with their Motion is not a violation, but rather is in compliance with this Court's Practices and Procedures. In addition, given that the Court's Practices and Procedures do not explicitly indicate that a certificate of conferral shall be filed, Plaintiffs have not violated same. However, Local Rule 37.1 states that discovery motions must be accompanied by a certification that the movant has made a reasonable effort to confer with the opposing party. W.D. Pa. L.R. 37.1. Hence, one could argue that Plaintiffs have failed to comply with Local Rule 37.1.[17] However, this Court has discretion concerning whether to dismiss the instant motion for failure to file the proper certification. In this instance, this Court will over look the fact that Plaintiffs did not file a certificate of conferral with their motion. *Powell*, 2007 WL 2234513, at *3.

---

[17]

The Court in no way undermines the importance of the meet and confer and reasonable effort requirements established by Local Rule 37.1. However, this case presents a unique situation in that the instant Motion is a motion for enlargement of discovery deadlines instead of a motion to compel discovery setting forth discovery disputes.

### iii. Defendants' delay and diligence argument

As to delay of this case, Defendants assert that Plaintiffs had four years to locate local counsel to aid in this matter and to identify a medical causation expert. (Docket No. 56 at 3). In addition, Defendants highlight that Plaintiffs "stalled" for more than five months to finalize the discovery plan in this case. (Docket No. 56 at 3-6). The Court agrees that this case has been burdened by repeated instances of delay.

Plaintiffs' current counsel is a solo general practioneer who is attempting to handle a complex case which requires counsel with expertise in toxic tort litigation. Neither Defendants nor counsel for Plaintiffs suggest that the Plaintiffs themselves are responsible for the delay concerning the filing of the causation expert reports. Although the Court is not considering the harsh sanction of dismissal, the Court is mindful that a client "cannot always avoid the consequences of the acts or omissions of its counsel." *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). In addition, the Third Circuit has held that "[t]ime limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation." *Poulis*, 747 F.2d at 868. Where compliance with deadlines is not feasible, however, a timely request for an extension should be made. *Id*. The Court notes that Plaintiffs' counsel timely filed their motion within a day of the expert causation reports' deadline. Although Plaintiffs' counsel has a history of delay with this Court, it is his clients, not Mr. Sholtis, who will be punished if the Court does not enlarge the deadlines. Accordingly, while considering Defendants' delay and diligence arguments, the Court places great weight on the fact that the record before this Court does not demonstrate that Plaintiffs themselves are personally responsible

for the repeated delays in this litigation.[18]

Further, as a result of the early motions filed by Defendants in this case, the Court's usual procedures of convening an early scheduling/case management conference for the discovery schedule in this matter were impeded.[19] The Court did not review the discovery deadlines with the parties until its case management conference on August 28, 2008 (Docket No. 41), and the discovery scheduling order was not finalized and/or docketed until September 5, 2008. (Docket No. 43). Hence, although Defendants' argument that Plaintiffs delayed in finalizing the discovery plan in this case is warranted, the Court notes that all of the allegations they cite in support of said delay occurred prior to the issuance of the Case Management Order that controls this case.

Moreover, the Case Management Order that controlled at the time this motion was filed stated: "[t]he expert discovery deadlines shall be extended only by leave of Court, and upon

---

[18]

This Court has previously held the same in *Drake v. Laurel Highlands,* Civ. A. No. 07-252, 2007 WL 4205820, at *6-8, 10-11 (W.D. Pa. Nov. 27, 2007). In *Drake*, the Court granted defendants' motion to compel certain discovery requests that were not produced as required by the case management order and ordered the plaintiff to produce that discovery by a certain date. *Drake*, 2007 WL 4205820, at *2. After the plaintiff again failed to produce the discovery requests, the Court issued a show cause order which set a response deadline and ordered that failure to timely respond would result in dismissal of the plaintiff's case. *Id*. The plaintiff failed to meet this deadline, and her case was dismissed for failure to prosecute. *Id*.

The plaintiff sought reconsideration of this order and after holding an evidentiary hearing, the Court granted reconsideration. *Id*. In applying the *Poulis* factors to the facts of the case, the Court placed great weight on the fact that the plaintiff was not personally responsible for any delays and that any history of dilatoriness was a result of plaintiff's counsel. *Id*. at *8-10. The Court found that the sanction of dismissal was not warranted under these circumstances but did impose monetary sanctions on plaintiff's counsel in the form of attorney's fees and costs due to her conduct. *Id*. at 10.

[19]

In addition, Plaintiffs' counsel's failure to properly serve Residex Corporation added to the delay in the case.

motion filed prior to the expiration of such deadline. If plaintiffs fail to serve their complete medical causation report by September 30, 2008, the case will, upon motion of any party, be dismissed." (Docket No. 43 at ¶ 3). Plaintiffs filed said Motion on September 29, 2008, prior to the expiration of the September 30, 2008 deadline, thereby, complying with the Court's Case Management Order.

### iv. Request for substitution and/or entry of appearance of new counsel

Defendants next argue that Plaintiffs' Motion should be denied because the request for substitution or addition of potential new counsel does not amount to good cause and that Plaintiffs have failed to show diligence. (Docket No. 56 at 9-10). As to diligence, Defendants contend that Plaintiffs' failure to attach an affidavit affirming their diligent search is sufficient reason to deny said Motion. (Docket No. 56 at 10).

As to good cause, no prior amendments to the scheduling order have been requested by Plaintiffs. In addition, counsel for Plaintiffs, as an officer of this Court, apprised the Court and the Defendants of the need to enlarge discovery for said expert causation reports far in advance of the discovery deadline in this matter, which at the time this Motion was filed was March 1, 2009 (Docket No. 43), and is now April 15, 2009. (Docket No. 62). While Plaintiffs' request for an enlargement of time to file their expert causation reports came the day before their filing deadline, the Court finds no evidence that said request was made in bad faith. The Court finds Plaintiffs' contentions credible, i.e., they have been diligently searching for co-counsel to aid in this matter. In fact, they now assert they have located such counsel. (Docket No. 50 at ¶ 6).

The cases Defendants cite in support of their contention concerning the requirement of an affidavit and their diligence arguments are factually distinguishable. First, *Home Insurance Co.*

*v. Law Offices of Jonathan De Young*, 156 F. Supp. 2d 488 (E.D. Pa. 2001), dealt with counsel's delay in filing an appeal from a grant of summary judgment, and the court noted that the failure of counsel to support factual averments related to the disposition of the motion by affidavit was sufficient to find that the party had failed to demonstrate good cause or excusable neglect. The court also highlighted that the merits of the client's case had been determined and that any prejudice resulting from the decision would affect only the attorney, who had been assigned all of his client's rights in the case. *Home Insurance*, 156 F.Supp.2d at 491. Here, Plaintiffs' motion to extend expert discovery deadlines was not untimely, the merits of this action have yet to be reached, and any prejudice would undoubtedly fall on Plaintiffs themselves and not their counsel. Further, as Defendants assert, the United States Court of Appeals for the Third Circuit in *Koplove v. Ford Motor Company*, 795 F.2d 15, 18 (3d Cir. 1986), stated "[w]e believe that a party taking the position that nine months is an inadequate period in which to obtain and file an expert's report has an obligation to provide the court with a record which affirmatively demonstrates, with specificity, diligent efforts of his or her part and unusual circumstances which have frustrated those efforts." However, the Court of Appeals in *Koplove* was addressing a summary judgment motion and a Rule 56 affidavit; "the case was nine months old and the deadline for filing the reports of any trial experts had passed a month earlier with no expert having been identified by plaintiffs." *Koplove*, 795 F.2d 15, at 18. Moreover, Defendants rely on *Matrix Motor Co., Inc. v. Toyota*, 218 F.R.D. 667 (C.D. Cal. 2003) for the proposition that Plaintiffs have failed to prove diligence. *Matrix* is also factually distinguishable in that the plaintiffs had already located and hired substitute counsel who informed the parties that he was only serving on a temporary basis, and that he did not intend to initiate discovery or move the case forward. *Matrix*, 218 F.R.D. at

668.  The court further found that no discovery had been started, the request for a continuance of the scheduled discovery dates was a month after the date for designations of the expert had passed, and plaintiff had failed to respond to the defendant's discovery requests in a timely fashion. *Matrix*, 218 F.R.D. at 671-672.

Here, although Plaintiffs filed their Motion the day before the deadline for submission of their expert reports, counsel for Plaintiffs, as an officer of this Court, has offered that additional co-counsel has been located.  Assuming Plaintiffs can support this claim, the Court determines that is reasonable to allow new co-counsel to have additional time in which to file expert causation reports.

### 4.      Conclusion

Based on the foregoing reasons, the fact that Plaintiffs are not personally responsible for the delay, and taking into consideration that the purpose of the Federal Rules is to "secure the just, speedy, and inexpensive determination of every action," the Court finds that Plaintiffs are permitted to enlarge the time to file their expert causation reports.  FED. R. CIV. P. 1.

### C.      Conclusion

Accordingly, the Court finds that permitting Plaintiffs, at this stage of the litigation, to present their case on its merits through further discovery and the filing of summary judgment motions does not amount to prejudice and that allowing withdrawal of the admissions will permit presentation of the merits of the instant matter.  *See* FED. R. CIV. P. 36(b).  For the further reasons set forth above, the Court **GRANTS** Plaintiffs' Motion to Withdraw Admissions and to Extend Time for Filing [46].

In addition, the Court **GRANTS** Plaintiffs' Motion for Extension of Time to File Plaintiffs'

Causation Expert Reports [50]. However, as the enlargement of the requested expert report deadline will cause further delay in this case, <u>no</u> additional extensions will be granted to Plaintiffs. Further, the Plaintiffs have thirty (30) days from the date of this Opinion to secure additional or substitute counsel. In addition, the Court reminds the parties that from this point on, all motions must comply with the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's Practices and Procedures. Appropriate Orders follow.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: January 5, 2009

cc/ecf: All counsel of record