IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT T. PRITCHARD, SR. and ELIZABETH ANN PRITCHARD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1621 Hon. Nora Barry Fischer |
| DOW AGRO SCIENCES, a division of DOW CHEMICAL COMPANY, and SOUTHERN MILL CREEK PRODUCTS OF OHIO | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

The instant dispute arose from Plaintiff Robert Ted Pritchard's ("Mr. Pritchard") numerous *ex parte* communications with the Court and his dissemination of a letter containing allegedly defamatory communications regarding his former counsel and one of the defense counsel. In response to its receipt of the letter, the Court issued an Order for Mr. Pritchard to show cause why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Docket No. 82). Before this Court are responses to the Show Cause Order and Defendants Dow AgroSciences LLC ("Dow") and Southern Mill Creek Products of Ohio, Inc.'s ("Southern Mill") (collectively "Defendants") Motion for Sanctions and to Partially Strike Mr. Pritchard's *pro se* Motions. (Docket No. 93). Based on the following, the Court imposes sanctions on Mr. Pritchard for his violations of Rule 11, and GRANTS, in part and DENIES, in part Defendants' Motions. (Docket No. 93).

## II. BACKGROUND[1]

### A. Delays in the Underlying Case

The instant lawsuit is a toxic tort case in which Mr. Pritchard and his wife, Elizabeth Ann Pritchard, assert that chemicals manufactured and sold by Defendants Dow and Southern Mill caused Mr. Pritchard to develop Non-Hodgkins Lymphoma. (Docket No. 23 at ¶¶7-10, 20).[2] This matter has been plagued by delays due to a series of *ex parte* communications by Mr. Pritchard which arose out of his apparent dissatisfaction with his former counsel and the Court's need to conduct a series of proceedings to resolve his reactions to same, as detailed below.[3]

By way of further background, on September 29, 2008, Plaintiffs filed a Motion for Extension of Time to File Plaintiffs' Causation Reports, requesting an additional 120 days to conduct expert discovery. (Docket No. 50). In said motion, Plaintiffs' then counsel, Douglas S. Sholtis, Esquire, asserted that after a diligent search lasting approximately one year, he was able to locate potential co-counsel, i.e., Anapol Schwartz, a Philadelphia-based personal injury law firm with a toxic tort practice. (Docket No. 50 at ¶ 6; Docket No. 65 at 19). Defendants opposed said motion, arguing that Plaintiffs failed to comply with Local Rules 7.1 and 37.1 and that there were numerous delays in this litigation. (Docket Nos. 52 and 53). The Court granted Plaintiffs' Motion, and

---

[1] For a more detailed description of the factual and procedural history of this case, see the Court's Memorandum Opinion of January 5, 2009. (Docket No. 65).

[2] Plaintiff Elizabeth Ann Pritchard has a loss of consortium claim. (Docket No. 1).

[3] Plaintiff's original complaint was filed *pro se* on August 27, 2007 in the Court of Common Pleas of Fayette County, Pennsylvania and removed by Defendants on November 28, 2007, based on this Court's diversity jurisdiction. (Docket No. 1).

Plaintiffs were given thirty days to secure the entry of the appearance of substitute or additional counsel. (Docket No. 69).

### B. The February and March *Ex Parte* Communications

On February 27, 2009, the Court received *ex parte* communications from Mr. Pritchard. (Docket No. 71). At that time, he was still represented by Mr. Sholtis. (*Id.*). Specifically, Mr. Pritchard sent the Court, William Padget, Esquire, counsel for Dow, Kimberly Brown, Esquire, counsel for Dow and Southern Mill, and Mr. Sholtis letters discussing settlement and a desire to terminate Mr. Sholtis as counsel.[4] (Tr. Hr'g., March 18, 2009, Docket No. 86 at 33:2-7). Mr. Pritchard also sent the Court a letter with attached photographs that pertain to Residex, an entity which Plaintiffs had initially named in their suit but had failed to properly serve. (*Id.* at 8:24-25). This correspondence did not appear to show copy to Dow or Residex. (*Id.* at 9:1-2).

In light of the receipt of said *ex parte* communications from Mr. Pritchard, the missed deadline by which Plaintiffs had been granted leave to secure additional counsel and conduct expert discovery, and a pending mediation date, the Court scheduled a status conference on March 9, 2009. (Docket No. 71). Prior to the status conference, Plaintiffs' then counsel filed a Motion to Withdraw as Attorney. (Docket No. 72). During the March 9th status conference, the Court contacted Mr. Lawrence Cohan of Anapol Schwartz. (Docket No. 73). Mr. Cohan, having been identified as potential substitute counsel, advised the Court that neither he nor his firm would be entering an appearance on behalf of Plaintiffs. (*Id.*). After further discussion and with agreement by Mr.

---

[4] This communication references Mr. Pritchard's aim to go to the news media about Dow AgroSciences with the intention of increasing exposure and bogging down Dow with legal claims. (Docket No. 86 at 39:5-15).

Pritchard, Mr. Sholtis agreed to continue representing Plaintiffs until substitute counsel entered an appearance or Plaintiffs entered appearances *pro se*. (*Id.*). Mr. Pritchard was also instructed that he was not permitted to make any further communications to the Court or any of the defense counsel while he was still represented by counsel. (*See id.*).

Following the March 9, 2009 status conference, Mr. Pritchard continued to send materials to Ms. Brown despite being instructed to cease all such communication. (*See id.*). Ms. Brown received a series of packages that included the letter and photographs sent to the Court on February 27th, as well as numerous documents and a compact disc relating to Residex and Dursban, one of the products at issue. (*See* Docket No. 86 at 33:19-36:9). Ms. Brown advised Mr. Sholtis of her receipt of each package. (*See id.* at 34:1-36:23).

### C. The Letter to the United States Attorney's Office

On March 12, 2009, Mr. Pritchard sent a letter to the United States Attorney's Office for the Western District of Pennsylvania, which was copied to the Court and forwarded by email to various members of the Allegheny County and Fayette County Bar Associations. (*Id.* at 8:16-23). The Court's Law Clerks and several of its interns also received this emailed letter. (*Id.*). The letter contained defamatory statements about one of the defense counsel and Plaintiffs' counsel regarding their competency and professional conduct. (*See id.* at 40:12-14, 64:5-9). Ms. Brown was forwarded the email in question by her associate, Vincent M. Roskovensky, Esquire, who originally received the email from his father.[5] (*Id.* at 36:16-24). Shortly after receiving this particular email, Ms. Brown

---

[5] Mr. Roskovensky's father, Vincent J. Roskovensky II, Esquire, is a solo practitioner in Uniontown and a member of the Fayette County Bar Association.

4

received copies of the same letter by email from several attorneys and the executive director of the Allegheny County Bar Association. (*See id.* at 38:2-21). Ms. Brown was also notified by William Shipley, Esquire, a partner in her firm, Thorp Reed & Armstrong, that he had received the letter through an email that also contained additional defamatory statements about both parties' counsel. (Tr. Hr'g., April 1, 2009, Docket No. 105 at 2:3-21).

Upon receiving Mr. Pritchard's letter, the Court convened a telephone status conference with counsel for the parties. During same, Mr. Sholtis renewed his Motion to Withdraw as Attorney, and the Court scheduled a hearing for March 18, 2009 to address Mr. Pritchard's communications and the renewed motion. (Docket No. 77). The Court then issued the following order:

> AND NOW, this 17th day of March, 2009, the Court, having advised Plaintiff Robert T. Pritchard during a status conference conducted on March 9, 2009 that he was represented by counsel and not to communicate with the Court regarding this matter, and thereafter, Plaintiff Robert T. Pritchard having made further communication to the Court, the Court's Law Clerk, and other members of the Court's staff,
>
> IT IS HEREBY ORDERED that Plaintiff Robert T. Pritchard shall have **NO FURTHER COMMUNICATION** with the Court or personnel of the Court's Chambers regarding this matter, whether those communications be made by telephone, letter, email or otherwise while represented by counsel; and
>
> IT IS FURTHER ORDERED that failure to comply with this Order may result in the Court imposing sanctions on Plaintiff Robert T. Pritchard.

(Docket No. 78)(emphasis in original).

At the March 18, 2009 hearing, the Court granted Mr. Sholtis's Motion to Withdraw as Attorney, effective March 24, 2009, and ordered Plaintiffs to enter their appearances *pro se* or obtain

new counsel by April 23, 2009. (*See* Docket No. 86 at 28:22-31:16). Also, the Court reconfirmed the March 23, 2009 deadline for Plaintiffs to serve answers to Defendants' written discovery requests. (*Id.* at 29:11-19).[6] Additionally, Mr. Pritchard admitted on the record to writing the letter at issue and mailing it to the United States Attorney's Office and this Court. (*Id.* at 25:23-26:5). He claims he sent the letter because he was upset with his counsel due to several of the issues raised during the March 9 status conference, namely the litigation's lack of progress. (*Id.* at 57:21-58:8). To further disseminate the letter, Mr. Pritchard went to the Allegheny County Bar Association's website and emailed every member with a last name beginning with the letter A, and half of the members with a last name beginning with the letter B. (*Id.* at 25:23-26:5). He used a similar method to disseminate the letter to the members of the Fayette County Bar. (*Id.* at 17:12-16). Mr. Pritchard also stated that he has a mental condition that may have facilitated his behavior. (*Id.* at 86:18).

### D. The Order to Show Cause and Mr. Pritchard's *Pro Se* Motions

Following the hearing, the Court exercised its authority under Federal Rule of Civil Procedure 11(c)(3) and issued a Show Cause Order directed to Mr. Pritchard, requiring him to do the following:

> 1. Show good cause why his circulation of the letter is not in violation of Rule 11 of the Federal Rules of Civil Procedure and why sanctions should not be imposed upon him for engaging in such conduct, including monetary sanctions, and/or a Court order requiring that Plaintiff circulate a written apology to all persons who have received said letter and prohibiting Plaintiff from engaging in such communications in the future.

---

[6] Mr. Sholtis agreed to finish the answers to the interrogatories, which he advised were substantially completed. (Docket No. 105 at 8:18-25).

> 2. Produce to counsel Kimberly Brown, Esquire a list identifying all email addresses to which said letter was forwarded, copies of all emails sent by Mr. Pritchard and any responses received by him from third parties, and copies of any emails that bounced back to Mr. Pritchard.
>
> 3. Appear at a Show Cause hearing scheduled for April 1, 2009, at 2:00 P.M.

(Docket No. 82).

In response to the Order to Show Cause, Mr. Pritchard, proceeding *pro se*, filed several confusing motions in which he petitioned the Court to either rescind or modify said order. (Docket Nos. 84, 85, and 91). The Court convened a telephone conference on March 24, 2009, during which Mr. Pritchard advised the Court that he would be representing himself in this matter. (Docket No. 89). The Court reminded him that he was required to copy and serve defense counsel with any submissions that he made to the Court in this matter. (*Id.*). Mr. Pritchard responded that he understood, asserting that he forwarded all of his submissions to defense counsel, although at least one submission did not contain a certificate of service. (*Id.*). Defense counsel also advised the Court that Defendants would be seeking sanctions. (*Id.*).

### E. The April 1, 2009 Hearing and Mr. Pritchard's Apology

At the April 1, 2009 hearing, the Court permitted David Rodes, Esquire[7] to enter a special appearance on behalf of the Plaintiffs for the purposes of the Rule 11 hearing. (Docket No. 105 at 2:3-21). The parties negotiated a written letter of apology. (*Id.* at 72:1-80:25). Ms. Brown and Mr. Sholtis requested that signed copies of the apology letter be provided to them so that they could

---

[7] Mr. Rodes is a partner at the law firm of Goldberg, Persky & White, P.C, a personal injury firm with an emphasis on toxic tort litigation.

disseminate it to whomever they desired. (*Id.*). Additionally, Ms. Brown represented to the Court that she had detailed fee petitions to provide the Court, but the Court ruled that it would first resolve whether Rule 11 applied prior to setting a briefing schedule regarding same. (*Id.* at 81:13-17).

During this hearing, Ms. Brown questioned Mr. Pritchard, inquiring whether he sent an email containing the March 12, 2009 letter to Mr. Shipley. (*Id.* at 31:25-32:2). Mr. Pritchard stated he did not recall sending such an email. (*Id.* at 31:3, 17-19). Nor did he recall making the statements contained in that letter. (*Id.* at 31:23-24).

Mr. Pritchard also testified as to the extent of his compliance with the Show Cause Order, stating that he procured some of the emails along with the email addresses, although he did not provide any information regarding the emails that "bounced back" to him. (Docket No. 105 at 7:13-25). Finally, Mr. Sholtis represented that he and Mr. Pritchard, to the best of their abilities, had completed responses to the interrogatories that were due. (*Id.* at 8:19-25).

### F. The April 29, 2009 Status Conference

The Court next convened a status conference on April 29, 2009, during which the Court granted Plaintiffs' Motion to Withdraw his various *pro se* motions as well as certain interrogatories and certain document requests which had been served on Defendants' counsel. (Docket No. 116). As a result, Defendants' Motion for a Protective Order relating to the withdrawn interrogatories (Docket No. 111) was denied as moot. (Docket No. 116). During the same status conference, Mr. Rodes also informed the Court of his intent to enter his appearance for Plaintiffs, which he did the following day. (*Id.*; Docket No. 115).

### G. Type of Sanctions Sought

The Plaintiffs' withdrawal of said motions did not prejudice Defendants' motion for sanctions. (Docket No. 116). Defendants seek sanctions under Federal Rules of Civil Procedure 11 and 37(b)(2), 28 U.S.C. §1927, and this Court's inherent authority, insofar as such request for sanctions arises from costs related to filing responses to Plaintiffs' *pro se* motions. (Docket No. 93). Defendants argue that sanctions should be imposed because Mr. Pritchard violated the Court's March 17, 2009 order to refrain from sending further communications to defense counsel by sending communications dated March 21 and 23, 2009. (Docket No. 105 at 99:16). In addition, Defendants assert that Mr. Pritchard failed to produce all of the email addresses to which he sent the March 12, 2009 letter. (Docket No. 93 at ¶ 15).

Plaintiffs respond that Mr. Pritchard's conduct does not satisfy the requirements for sanctions under the authorities cited by Defendants. (Docket No. 107). Further, Plaintiffs have submitted information tending to show that they have insufficient financial resources to pay monetary sanctions. (Docket No. 119). Because the sanctions issue has now been fully briefed and argued, this matter is ripe for disposition.

## II. DISCUSSION

### A. Responses to the Court's Show Cause Order of March 20, 2009

Mr. Pritchard has been ordered to show cause why his dissemination of the March 12, 2009 letter is not in violation of Federal Rule of Civil Procedure 11(b). Rule 11(b) states, in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

FED. R. CIV. P. 11(b). Rule 11 sanctions "are based on an objective standard of reasonableness under the circumstances." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Bad faith is not required. *Id.* Particularized notice of the grounds for any sanction under consideration is generally required. *Id.* at 1262-63. Under Rule 11(c)(1), sanctions may be initiated by motion or by the court's initiative. *Id.* at 1264; FED. R. CIV. P. 11(c)(1). When acting on its own initiative, a court should first enter an order describing the specific conduct that it believes will warrant sanctions and direct the person it seeks to sanction to show cause why particular sanctions should not be imposed. *Martin*, 63 F.3d at 1264; FED. R. CIV. P. 11(c)(3).

Here, the Court entered an Order to Show Cause ("Show Cause Order") pursuant to Rule 11(c)(3) in which it ordered Plaintiff to show why his circulation of the email of March 12, 2009 should not warrant sanctions. Plaintiff maintains he should not be sanctioned under Rule 11 as the Rule is not directed to his communications with the Court and members of the Allegheny County and Fayette Bar Associations. (Docket No. 107 at 2-4). In response, Defendants argue that Mr. Pritchard's conduct is sanctionable under Rule 11 because Plaintiff violated the Court's Show Cause Order by filing various motions rather than producing the documents specified in the Order. (Docket No. 94 at 2-4).

The purpose of Rule 11 is to deter the filing of frivolous lawsuits in the district courts. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 392-93 (3d Cir. 2002)(citing *Business Guides, Inc. v. Chromatic Comm'cns Enters.*, 498 U.S. 533, 552 (1991)). Generally, letters and correspondences

are not considered "other papers" or "filings with the District Court." *VDI Techs. v. Price*, 781 F. Supp. 85, 95 (D.N.H. 1999); GREGORY F. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 5(D)(2)(a) (4th ed. 2008) ("A paper - like a letter - that has not been, or is not required to be, presented to the court is not a "paper" for which Rule 11 sanctions are available."). In the limited situation where letters substitute for more formal court papers, such correspondence is subject to the strictures of Rule 11. *See Legault v. Zambarano*, 105 F.3d 24, 27-28 (1st Cir. 1997).

In *Legault*, the plaintiff's counsel sent a letter to the magistrate judge three days before a preliminary injunction hearing "with the intent to influence the court, at a time and in a manner calculated to insure its impact." *Id.* The United States Court of Appeals for the First Circuit held that this was sanctionable conduct under Rule 11 but noted that "[c]ourts have been properly reluctant to characterize a letter generally as an 'other paper' in weighing Rule 11 sanctions." *Id.* In *McDonald v. Khurshid*, Civ. A. No. 04-5736RJB, 2006 WL 1328869 (W.D. Wash. May 15, 2006), the defendant sent numerous pleadings, motions, and letters full of inflammatory and harassing remarks completely irrelevant to the matter at hand and, for these reasons, the court imposed sanctions pursuant to Rule 11. *Id.* at **5, 10.

Here, Mr. Pritchard wrote letters to the Court, Mr. Padgett, and Ms. Brown discussing settlement and his intention to go to the news media about Dow, and made similar settlement demands at the March 9, 2009 status conference. Mr. Pritchard then wrote the March 12, 2009 letter to the United States Attorney's Office specifically addressing United States Attorney Mary Beth Buchanan and Assistant United States Attorney Robert Cessar. He copied the Court on this correspondence, then disseminated the letter in an email to a number of attorneys, and law clerks,

as well as the Court. (Docket No. 86 at 8:16-23). Mr. Pritchard also sent documents, photographs, and other materials to attorneys involved in this case after being specifically instructed not to do so. (Docket No. 73). While these letters appear to be on the boundary of what is considered an "other paper," in this Court's estimation, it is reasonable to infer that Mr. Pritchard sent these missives with the intent of influencing the Court to look favorably on his position and force Defendants into settlement negotiations, especially in light of the March 9, 2009 conference wherein Mr. Pritchard demanded settlement monies, which demand was refused by Defendants. *See Legault*, 105 F.3d at 28 (holding that sending a letter with clear intent to influence a court is sanctionable under Rule 11). Accordingly, Mr. Pritchard is subject to sanctions under Rule 11 for his correspondence. The Court will discuss appropriate sanctions below.

B. **Sanctions Under Federal Rule of Civil Procedure 37(b)(2)**

In addition to sanctions under Rule 11, Defendants move for sanctions under Federal Rule of Civil Procedure 37(b)(2), including reasonable expenses and attorneys' fees. (Docket No. 93 at 1). Defendants contend that Mr. Pritchard failed to produce the emails in question, the addresses to which he sent them, and any "bounce backs" pursuant to this Court's order. (Docket No. 94 at 5-6). They point to Mr. Pritchard's testimony from the hearing of March 18, 2009 in which he agreed to print out said documents and mail them to counsel as soon as he arrived home from the hearing. (Docket No. 86 at 79:1-25; 80:1-25).

Rule 37(b)(2) authorizes a court to impose sanctions upon a party who fails to obey a discovery order. *See Moser v. Bascelli*, 879 F. Supp. 489, 493-94 (E.D. Pa. 1995). Sanctions may include requiring the party to pay reasonable expenses and attorneys' fees caused by the failure to

comply with the order. Rule 37(b)(2)(C) provides that:

> [i]n addition to or instead of the expenses above [in Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2)(C).

Plaintiffs counter that Defendants improperly attempt to tie the Court's order to provide the copies of the emails to previous discovery requests, and that said order is not related to any discovery request. (Docket No. 107 at 5). Additionally, Plaintiffs contend that they do not have the ability to pay any monetary sanctions. Indeed, Plaintiffs' submission regarding their financial condition (Docket No. 119) reflects that they have very limited resources, at best.

A party subject to sanction under Rule 37(b)(2) generally has engaged in multiple discovery violations. *See Nat'l Fire & Marine Ins. Co. v. Robin James Construction, Inc.*, 478 F. Supp. 2d 660, 6003 (D. Del. 2007)(sanctioning the defendant for violating multiple discovery orders); *Moser*, 879 F. Supp. at 494 (imposing a sanction of attorneys' fees and expenses on the plaintiff for continuing to disobey a court order). When monetary sanctions are necessary to deter future discovery violations, indigence alone is not always a defense against such penalties. *See Toner v. Wilson*, 102 F.R.D. 275, 276 (M.D. Pa. 1984) (holding that as the plaintiff was an indigent *pro se* litigant who had previously filed eleven lawsuits in which he consistently disobeyed discovery orders, dismissal alone was not enough to deter future discovery violations); *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114-15 (5th Cir. 1986)(sanctioning an *in forma pauperis* litigant for violating numerous discovery requests and orders, including using his deposition as an opportunity to present

nonsensical evidence and attack the defense counsel).

Plaintiff is not subject to Rule 37 sanctions for several reasons. First, Plaintiffs are correct that the Court's Order of March 20, 2009 to produce emails, addresses, and "bounce backs" does not relate to discovery in the instant litigation. Second, Plaintiffs substantially complied with said Order by providing what materials they did have, including copies of the email, and a list of many of the addresses that received the email. (Docket No. 105 at 8:18-25). Third, Plaintiff has provided the Court with financial information demonstrating a severe inability to pay any monetary sanction. Fourth, Mr. Pritchard produced a written apology, which the involved counsel were permitted to disseminate as they saw fit. (Docket Nos. 104, 105 at 80:5-12).

Further, the dissemination of letters of this type is unlikely to be repeated. Plaintiffs have obtained new counsel, David Rodes, Esquire. Mr. Rodes has engaged in conversations with Mr. Pritchard, during which Mr. Pritchard expressed regret for sending the letter and other communications and acknowledged that it was wrong to do so. (Docket No. 105 at 14:1-7). Mr. Pritchard further agreed to retract the statements and apologize for them, and has not engaged in any similar conduct since the hearing on April 1, 2009.[8] (*Id.* At 14:8-16). Therefore, monetary sanctions are not necessary at this time to further the goal of deterring discovery violations in this case. Accordingly, the Court will not impose the requested sanction of expenses and attorney's fees pursuant to Rule 37(b)(2).

**C.** **Sanctions under 28 U.S.C. § 1927**

---

[8] The Plaintiffs were recently deposed in this case. Throughout two days of deposition testimony, in part witnessed by this Court's law clerk, Mr. Pritchard acted with appropriate decorum.

Defendants also maintain that Mr. Pritchard communicated with the Court *ex parte* while still represented by counsel, in violation of the Court's Order of March 17, 2009. (Docket No. 94 at 7). Additionally, Mr. Pritchard filed his various motions in violation of the Court's Show Cause Order of March 20, 2009. (*Id.*). Therefore, Defendants argue, Mr. Pritchard should be sanctioned under 28 U.S.C. § 1927. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*

Mr. Pritchard filed his motions as a *pro se* litigant. There is a split of authority as to whether a *pro se* litigant is an "other person admitted to conduct cases." The United States Court of Appeals for the Third Circuit considered this issue in *Compare Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc.*, 110 Fed.Appx. 283 (3d Cir. Oct. 5, 2004) *with Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235-36 (9th Cir. 1995). In *Institute for Motivational Living*, the court noted the circuit split on the issue of applying § 1927 to *pro se* litigants, but ultimately decided that, because other sanctions provisions applied, it need not address the issue. *Id.* at 287. The United States Court of Appeals for the Ninth Circuit, however, has held that 28 U.S.C. § 1927 applies to *pro se* litigants. *See Wages,* 915 F.2d 1230, at 1235-36. In *Wages*, the court held that "by attempting to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim, and by continually moving for alterations in the district court's original judgment despite that court's clear unwillingness to change

its mind, Wages evidenced bad faith in multiplying the proceedings in this case 'unreasonably and vexatiously.'" *Id.*(quoting 28 U.S.C. § 1927).

As Mr. Pritchard's motions have been withdrawn, these proceedings have not been multiplied "unreasonably or vexatiously." 28 U.S.C. § 1927. Mr. Pritchard, proceeding *pro se*, made poor decisions by engaging in *ex parte* communications with the Court and disobeying its orders, causing Defendants to spend resources in responding to his various motions. However, he has acknowledged that his conduct was wrong. (Docket No. 86 at 57:7-25). The Court is also mindful that Mr. Pritchard has represented to the Court that he may suffer from a mental illness (*Id.* at 86:17-24). Also, as mentioned above, Mr. Pritchard has retained new counsel and has been advised not to engage in such unwise conduct in the future. (*See* Docket No. 105 at 14:1-7). Accordingly, the Court declines to impose sanctions under 28 U.S.C. § 1927.

### D. Sanctions under the Court's Inherent Authority

Defendant contends that the Court should also impose sanctions under its inherent authority. (Docket No. 94 at 7). The term "inherent power" has been employed in a variety of ways. *See generally Eash,* 757 F.2d at 562 (3d Cir. 1985); *see also* GREGORY F. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 26(A)(1) (4th ed. 2008). "It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution', powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991)(quoting *United States v. Hudson*, 11 U.S. 32 (1812)). Courts are vested with powers "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). One of these powers is the power to punish for "contempts of authority." *Ex parte Robinson*, 86 U.S. 505 (1874). The contempt power falls into the general category of those powers "necessary to the exercise of all others." *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980); *see also Eash*, 757 F.2d at 562.

The Court of Appeals for the Third Circuit recognizes the district courts' inherent authority to impose sanctions. *See Institute for Motivational Living*, 110 Fed.Appx. at 287; *Eash*, 757 F.2d at 562. In general, a court should exercise caution in resorting to inherent authority and look to the Federal Rules of Civil Procedure or a relevant statute prior to such exercise. *Chambers*, 501 U.S. at 50. However, if no rule or statute is available to sanction the present conduct, then a court may exercise its inherent authority. *Id.*; *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 189 (3d Cir. 2002).

Because Rule 11 applies to Mr. Pritchard's conduct, the Court will not impose sanctions under its inherent authority. *Chambers*, 501 U.S. at 50 (noting that courts should generally refrain from resorting to their inherent authority to impose sanctions when an appropriate rule applies).

### E. Type of Sanctions to be Imposed

When choosing what sanction to impose, a court must ensure that the sanction is "tailored to address the harm identified." *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 110-11 (3d Cir. 1999)(quoting *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994)). District courts are encouraged to take into consideration mitigating factors, such as a party's inability to pay. *See Dipaolo v. Moran*, 407 F.3d 140, 145-46 (3d Cir. 2005). One of the main

17

purposes in imposing sanctions is deterrence. *See, e.g., Eisenstein v. Ebsworth*, 148 Fed.Appx. 75, 78 (3d Cir. 2005). Here, the harm is a period of delay to this litigation, added expenses incurred by Defendants, and potential harm to the reputation of counsel. (*See* Docket No. 86 at 40:12-14, 64:5-9).

Plaintiffs' former counsel has stated that he is a young attorney with a long future ahead of him, and he does not want his credibility irreparably harmed by the implications of Mr. Pritchard's letter that he was engaged in activity outside the standards of an attorney licensed within the Commonwealth of Pennsylvania. (*Id.* at 18:4-13; 64:5-9). One of the defense counsel, Ms. Brown, says that this email "smear campaign" is designed to hurt her and force her client into a settlement. (*Id.* at 40:12-14). However, aside from being required to participate in the multiple proceedings addressing this issue, no actual harm has been demonstrated to this Court.[9]

Balanced against the harm caused by Mr. Pritchard's conduct is Mr. Pritchard's mental condition, indigence, and apology. His financial records show an inability to pay even a modest sanction. His indigence is coupled with his admission on the record of a mental incapacity that may have contributed to his problematic behavior. (*Id. at* 86:17-24). The Court must consider these factors along with the apology when fashioning the appropriate sanction. *See Dipaolo* 407 F.3d at 145-46.

In this Court's estimation, monetary sanctions are not appropriate in this situation. Plaintiffs have obtained new counsel, and upon discussions with same have been advised not to engage in like

---

[9] To the extent any party has been harmed, that party may seek the state court remedy of a civil action for defamation. 42 Pa. C.S. § 8343.

or similar conduct in the future. In fact, this Court is not aware of any further renegade communications made by Plaintiff since the April 1, 2009 hearing. Therefore, it would appear that there is little need to deter future improper conduct.

Accordingly, the Court finds that the most appropriate sanction, i.e. the apology letter already issued, is sanction enough. Any harm to either counsel should have been remedied by said apology letter and counsel's dissemination of same. To the extent that is not the case, then a remedy, if any, lies elsewhere. Moreover, outside of the apology letter and monetary sanctions, no other type of sanctions have been requested by Defendants' counsel[10] or Mr. Sholtis.

## IV. CONCLUSION

Based on the foregoing, the Court makes the following rulings. The conduct of Plaintiff Robert T. Pritchard is subject to sanctions under Rule 11. As a sanction, he had been previously ordered to produce a written apology to counsel. No other sanction will be imposed at this time. Accordingly, Defendants' Motion to Strike Plaintiffs' Motions (Docket No. 93) is DENIED, as moot, as Plaintiffs' Motions (Docket Nos. 84, 85, 91) have been withdrawn. Defendants' Motion for Sanctions (*Id.*) is GRANTED, in part, and DENIED, in part. It is granted to the extent that the Court imposes sanctions under Federal Rule of Civil Procedure 11. It is denied to the extent that the Court does not impose sanctions under Federal Rule of Civil Procedure 37(b)(2), 28 U.S.C. § 1927,

---

[10] Ms. Brown indicated she was ready to proceed with a request for attorneys' fees. (Docket No. 105 at 81:13-17). Given Plaintiffs' lack of resources, the Court would likely deny same. *See Dipaolo* 407 F.3d at 145-46 (encouraging courts to take mitigating factors, such as inability to pay, into consideration when imposing sanctions).

or the Court's inherent authority.  An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: June 25, 2009.

cc/ecf: All Counsel of Record.

    Douglas Sholtis, Esq.
    100 Main Street, Suite C
    P.O. Box 656
    Smithfield, PA 15478